**Robert Wayne JENKS, Plaintiff–Appellant,**

v.

**Sheriff Patrick SULLIVAN, Arapahoe County Sheriff, and The County Commissioners for The County of Arapahoe, State of Colorado, Defendants–Appellees.**

**No. 90CA0199.**

Colorado Court of Appeals, Div. II.

Feb. 28, 1991.

Rehearing Denied April 11, 1991.

Certiorari Denied Aug. 5, 1991.

Dallas, Holland & O'Toole, P.C., Neil D. O'Toole, Denver, for plaintiff-appellant.

Peter Lawrence Vana III, Arapahoe County Atty., L. Cary Unkelbach, Asst. County Atty., Littleton, for defendants-appellees.

Opinion by Judge METZGER.

Plaintiff, Robert Wayne Jenks, appeals from the summary judgment entered in favor of defendants, the County Commissioners for the County of Arapahoe and Patrick Sullivan, Arapahoe County Sheriff. We affirm.

At 10:30 a.m. on January 20, 1988, at the Arapahoe County Courthouse, a district court judge requested, in writing, that a uniformed deputy sheriff be present in a specified courtroom during a 1:30 p.m. hearing that day. The request also sought to have persons entering the courtroom screened with a metal detector. This request did not name the parties to the hearing, but did list a case number for a domestic relations action.

At 1:10 p.m., in the third floor corridor, directly opposite the courtroom of the scheduled hearing, plaintiff was shot in the hand. His assailant was one of the parties to the lawsuit for which the security request had been made. The assailant then shot and killed his wife. Plaintiff and his assailant were not acquainted and had had no contact before the incident.

No sheriff was present during the incident. Pursuant to established custom and practice, sheriff's deputies assigned to courtroom security such as this would normally arrive at their assigned courtroom 10–15 minutes before the time designated in the judge's request for courtroom security.

Plaintiff filed this action against defendants, asserting that they were negligent in failing to exercise reasonable care in ensuring his safety. He asserted that the sheriff and his employees "deliberately failed to exercise reasonable care to protect plaintiff against the dangers which were not ordinarily present at the courthouse"; he alleged that the commissioners "failed to maintain ... courtroom facilities in a manner which would ensure that people attending these facilities would not be exposed to unreasonable harm or danger."

In their answer, all defendants raised the defense that plaintiff's claims were barred or limited by the Governmental Immunity Act, § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). Defendants also filed a motion for summary judgment, arguing that plaintiff's claims did not fall within any statutory exceptions to defendants' immunity as provided by the Governmental Immunity Act.

After considering the pleadings and affidavits supplied by the parties, and hearing arguments of counsel on the issues raised, the trial court granted the defendants' motion for summary judgment, concluding that the provisions of the Governmental Immunity Act applied and that defendants' claims did not fall within any of the exceptions listed therein.

Plaintiff contends that the trial court erred in determining that the Governmental Immunity Act barred his action in this

case. He argues that the exception contained in § 24–10–106(1)(c), C.R.S. (1988 Repl.Vol. 10A), which provides a waiver of the county's immunity for a "dangerous condition of any public building," should be construed to include the absence of security in the building at the time of the incident. We disagree.

A dangerous condition is defined as:

"a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. For the purposes of this subsection (1), a dangerous condition should have been known to exist if it is established that the condition had existed for such period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate...."

Section 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A).

■ In *Mentzel v. Judicial Department*, 778 P.2d 323 (Colo.App.1989), we held that "acts or omissions in construction and maintenance relate directly to the physical condition of the facility itself rather than to 'uses' of the facility that, albeit dangerous, do not render the facility or structure unsafe for public use." Thus, the dangerous condition exception relates to a physical condition of the building, not to activities conducted therein.

■ Here, the undisputed facts fail to show or imply that the physical condition of this courthouse building was inherently unsafe for public use on the day plaintiff was shot. The record contains no evidence that any violence, or threat of violence, had occurred in this courthouse building before the day in question. Plaintiff's gunshot wound did not result from the physical condition of this courthouse building itself, but from the actions of one who was present in the facility. Accordingly, we agree with the trial court's determination that the dangerous condition exception to the Government Immunity Act in § 24–10–106(1)(c) is inapplicable.

We note that the majority of courts in other jurisdictions which have considered this issue have reached the same result and have maintained the distinction we apply today between physical conditions of government buildings and uses of government buildings. *See Reardon v. Department of Mental Health*, 430 Mich. 398, 424 N.W.2d 248 (1988) (nursing student, who was sexually assaulted by one of her instructors in a dormitory room operated by defendants, failed to establish a dangerous or defective condition, thus precluding relief under the Governmental Immunity Act); *Gunn v. Northville State Hospital*, 171 Mich.App. 669, 430 N.W.2d 815 (1988) (mental patient injured by another party not entitled to maintain action, since he failed to establish any dangerous or defective building condition so as to preclude application of the Governmental Immunity Act); *Landry v. Detroit*, 143 Mich.App. 16, 371 N.W.2d 466 (1985), *rev'd on other grounds sub nom. Hadfield v. Oakland County Drain Commissioner*, 430 Mich. 139, 422 N.W.2d 205 (1988) (witnesses in a judicial proceeding who were attacked and stabbed by an assailant in a Detroit courthouse not entitled to benefits of exception in Michigan Governmental Immunity statute because dangers condition stemmed from activities, not from a physical or structural defect); *Rodriguez v. New Jersey Sports & Exposition Authority*, 193 N.J.Super. 39, 472 A.2d 146 (1983) (race track patron, assaulted and robbed in a parking lot, not allowed to sue on basis that race track had a dangerous condition); *Rhoads v. Lancaster Parking Authority*, 103 Pa.Commw. 303, 520 A.2d 122 (1987) (plaintiff's action for injuries sustained in an assault and battery in the city's parking authority garage not within the real property exception to the Governmental Immunity Act); *Johnson v. Philadelphia*, 93 Pa. Commw. 87, 500 A.2d 520 (1985) (basketball player, injured by intruders at city-owned

public recreation center, not entitled to maintain action within dangerous or defective condition exception to Governmental Immunity Act). In each of these cases, as here, there was no evidence of the existence of a dangerous physical condition of the building or facility.

Consequently, we adopt the majority rule and hold that the dangerous condition exception to the Colorado Governmental Immunity Act is limited to building or structure defects and cannot be used to maintain an action involving only a use of the building. Thus, the entry of summary judgment was proper.

Judgment affirmed.

DAVIDSON, J., concurs.

ROTHENBERG, J., concurs in part and dissents in part.

Judge ROTHENBERG concurring in part and dissenting in part.

I respectfully dissent from the majority opinion's treatment of the "dangerous condition" exception to governmental immunity as it relates to the county commissioners.

In *Mentzel v. Judicial Department,* 778 P.2d 323, 325 (Colo.App.1989), this court noted that the dangerous condition exception in the sovereign immunity statute, § 24–10–106(1)(c), C.R.S. (1988 Repl.Vol. 10A), was designed to "encourage public institutions to construct, maintain, and use their buildings and facilities in a manner that will assure the safety of persons who visit them."

The *Mentzel* opinion states:

"The language a physical condition of a facility *or the use* thereof must be interpreted to relate to the underlying purpose of assuring safe physical conditions in public buildings.... Thus, the word use thereof relates to the physical condition of public facilities. No waiver of immunity was intended for injuries caused by the use of facilities *unless such use renders the facility itself an unreasonable risk to public safety....*" (emphasis added)

A courthouse is unlike any other public facility where attendance is optional. Rather, a citizen summoned for jury duty, or subpoenaed as a party or witness to a lawsuit, has a mandatory duty to appear. Further, the basic use intended for a courthouse is to serve as a forum for the peaceful 'resolution of heated disputes. It is entirely foreseeable that certain litigants, witnesses, and their families will be emotional, angry, irrational, and occasionally violent. This is especially true in domestic disputes and in criminal cases.

Thus, since the "use" of a courthouse is to serve as a magnet for potentially volatile situations attracting potentially violent individuals, it is entirely appropriate, in my opinion, to require county authorities to take *reasonable measures* to ensure the public's physical safety while at the courthouse. And, the issue of whether the Arapahoe County courthouse was in a dangerous condition should be determined by a jury of Arapahoe County citizens as a factual matter after considering all the circumstances, including the use for which the facility was intended. *See Landry v. City of Detroit,* 143 Mich.App. 16, 371 N.W.2d 466, 472 (Mich.App.1985) *rev'd on other grounds sub nom. Hadfield v. Oakland County Drain Commissioner,* 430 Mich. 139, 422 N.W.2d 205 (1988) (J. Kelly concurring in part and dissenting in part) (witness stabbed in courtroom).

Here, plaintiff Jenks claims that omissions by the county commissioners, such as the failure to provide metal detection devices at entries to the courthouse, or to take other reasonable measures in the courthouse, created an unreasonable risk to public safety and to him. Jenks further claims that the risk to public safety was known to exist or should have been known to exist.

In support of his contention, Jenks notes that in January 1986, another tragic shooting occurred in a courtroom at the old Aurora branch of the Arapahoe County courthouse following a domestic relations case. Also, the record here contains an affidavit by Arapahoe County Sheriff Patrick Sullivan which states:

"In January of 1986, I met with District Judge Robert F. Kelly of the Eighteenth

Judicial District at his request in the wake of a shooting that occurred in the old Aurora courthouse to discuss security measures that might be taken to improve security. As a result of that meeting, *I made a written request to the Board of County Commissioners for Arapahoe County for a supplemental appropriation needed to add additional deputies to my force so as to be able to assign personnel to the courthouse for security as asked for by Judge Kelly. My funding request was denied* based upon the County Attorney's opinion that neither the sheriff nor the County was obligated to fund or provide security for the courthouse, except as may be requested by a particular judge in a particular case." (emphasis added)

In my opinion, these facts would allow a reasonable jury to consider whether the county's failure to take reasonable security measures based on known risks resulted in a dangerous condition in the use of the courthouse and whether that dangerous condition was the cause of harm to plaintiff Jenks. I would therefore affirm the summary judgment as to defendant Sullivan, but would reverse it as to the Arapahoe County Commissioners and remand for further proceedings on that claim.