**Robert Wayne JENKS, Petitioner,**

**v.**

**Sheriff Patrick SULLIVAN, Arapahoe County Sheriff, and the County Commissioners for the County of Arapahoe, State of Colorado, Respondents.**

**No. 91SC273.**

Supreme Court of Colorado, En Banc.

March 10, 1992.

Dallas, Holland & O'Toole, P.C., Neil D. O'Toole, Denver, for petitioner.

Peter Lawrence Vana, III, Arapahoe County Atty., L. Cary Unkelbach, Asst. County Atty., Littleton, for respondents.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Deputy Atty. Gen., Denver, for amicus curiae State of Colo.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Jenks v. Sullivan,* 813 P.2d 800 (Colo.App.1991), affirming the trial court's order granting summary judgment in favor of the respondents, the Arapahoe County Sheriff and the County Commissioners for the County of Arapahoe. The trial court concluded that Colorado's sovereign immunity statute bars recovery by the petitioner, Robert W. Jenks, who was injured by the acts of a third party while he was in the Arapahoe County courthouse. We affirm.

## I

On January 20, 1988, a domestic relations hearing was scheduled to take place before a district court judge in the Arapahoe County courthouse at 1:30 p.m. Prior to the hearing, the judge requested the sheriff's department to screen with a metal detector all persons coming into her courtroom and to have a uniformed deputy sheriff present.

At approximately 1:00 p.m., Jenks arrived at the courthouse, accompanying the wife of Chanh Van Duong, one of the parties in the hearing. The other party, Chanh Van Duong, was already at the courthouse. Following a brief conversation between Duong and his wife, Duong shot and killed her and shot Jenks in the hand. The shooting occurred in the corridor outside the courtroom where no security precautions had been requested and before the deputy sheriff had arrived.

Jenks sued the respondents claiming that they were negligent in failing to exercise reasonable care for his safety and in failing to maintain courtroom facilities in a manner that would protect people who were in the courthouse from unreasonable harm or danger. The respondents moved for summary judgment on the ground that, as a matter of law, the Colorado Governmental Immunity Act (Act), section 24–10–101 to –120, 10A C.R.S. (1988), barred Jenks' claims. The trial court granted the motion, holding that the Act applied and Jenks' claims did not come within any of the ex-

ceptions provided for in the Act. The court of appeals affirmed, holding that the facts alleged did not fall within the dangerous condition exception to the Act, section 24–10–106(1)(c), 10A C.R.S. (1988), which it construed to relate to a physical condition of the building, not to activities conducted therein.

## II

Jenks contends that the respondents did not use reasonable care in protecting him from a dangerous condition which existed in the courthouse and therefore the dangerous condition exception to the Act contained in section 24–10–106(1)(c) should be construed to include the absence of security in the courthouse at the time of the shooting. Accordingly, the question we must resolve is whether the dangerous condition exception to governmental immunity is applicable to Jenks' claim.

In *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971), we abolished the doctrine of sovereign immunity, but found that the General Assembly had the authority to restore sovereign immunity, if it so chose. *Id.* at 105, 482 P.2d at 972. Subsequently, the General Assembly enacted the Colorado Governmental Immunity Act. In the Act's declaration of policy, the General Assembly recognized that the doctrine of sovereign immunity is in some instances an inequitable doctrine, but stated "that unlimited liability could disrupt or make prohibitively expensive the provision of ... essential public services and functions." § 24–10–102, 10A C.R.S. (1988). The General Assembly also recognized that:

> [T]he taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens.

§ 24–10–102. Therefore, the Act and its exceptions must be construed to meet the legislative recognition that, while sovereign immunity sometimes produces unfair results, the necessities of providing essential

public services and protecting taxpayers against excessive fiscal burdens are important considerations.

The Act provides that all public entities, officials and employees are immune from tort liability unless, under the circumstances, they fit within the specified exceptions. One of these statutory exceptions, section 24–10–106(1)(c), provides that immunity is waived in an action for injuries resulting from a "dangerous condition of any public building." "Dangerous condition" is defined in section 24–10–103(1), 10A C.R.S. (1988), as follows:

> [A] physical condition of a facility *or the use thereof* which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity *in constructing or maintaining such facility.* For the purposes of this subsection (1), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate.

(Emphasis added.)

■ Jenks argues that the plain meaning of the phrase "or the use thereof" relates to uses in a building. In light of the legislation following our abolishment of sovereign immunity, we are convinced that the legislature did not intend such an expansive reading of the dangerous condition exception. This conclusion is supported by the language of the statute, our cases construing the Act, and the decisions of other courts which have considered similar exceptions.

■ The phrase "or the use thereof" means the use of a physical condition of a facility. Condition is defined as: "Mode or state of being; state or situation; essential quality; property; attribute; status or rank." *Black's Law Dictionary* 293 (6th ed. 1990). Thus, the statute refers to an injury arising from the state of the building itself or the use of a state of the building, but not to one arising from activities conducted within the building. Injury stemming from the use of a dangerous or defective physical condition of the building itself might include injury resulting from, for example, using a faulty elevator or falling down defective stairs.

■ In essence, Jenks argues that the courthouse was operated in a negligent manner. A statute should be interpreted to give consistent, harmonious, and sensible effect to all parts. *Martinez v. Continental Enterprises,* 730 P.2d 308, 315 (Colo.1986); *People v. District Court,* 713 P.2d 918, 921 (Colo.1986). Exceptions to sovereign immunity, being in derogation of common law, must be strictly construed to restrict their provisions to the clear intent of the legislature. *Bloomer v. Board of County Comm'rs,* 799 P.2d 942, 946 (Colo. 1990). Section 24–10–106(1) sets forth several exceptions to the general rule of sovereign immunity, of which the dangerous condition of any public building exception contained in paragraph (c) is only one. It is helpful to consider the language used by the General Assembly to carve out other exceptions to the rule of sovereign immunity in construing any one of those exceptions. Particularly instructive are two pairs of exceptions to sovereign immunity found in section 24–10–106(1)(b) and (e) and in section 24–10–106(1)(e) and (f). The first set provides in relevant part:

> (b) The operation [1] of any public hospital ... or jail by such public entity;

1. Operation is defined in § 24–10–103(3)(a), 10A C.R.S. (1988), as follows:

[T]he act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any public hospital, jail, or public water, gas, sanitation, power, or swimming facility.

In addition § 24–10–103(3)(b) sets forth the following exceptions to the definition:

....

(e) A dangerous condition of any public hospital, jail....

§ 24–10–106(1)(b) and (1)(e). The second set provides, as relevant:

(e) A dangerous condition of any ... public water, ... sanitation, electrical, power, or swimming facility....

(f) The operation and maintenance of any public water facility, ... sanitation facility, electrical facility, power facility, or swimming facility by such public entity.

§ 24–10–106(1)(e) and (1)(f).

Jenks' injuries resulted from the alleged negligent failure to provide security services in the courthouse. An examination of the entire statutory section reveals that the legislature intended to waive sovereign immunity only for the operation of specific types of public facilities. The omission of the term "operation" in section 24–10–106(1)(c) clearly suggests that the legislature did not intend the operation of the courthouse to be excepted from sovereign immunity. If we were to construe the dangerous condition exception contained in section 24–10–106(1)(c) broadly enough to include Jenks' claim we would render the language of subparagraphs (b) and (f) of section 24–10–106(1) redundant. Such a construction is impermissible. *See People v. Terry,* 791 P.2d 374, 376 (Colo.1990) ("Courts should attempt to give effect to all parts of a statute, and constructions that would render meaningless a part of the statute should be avoided.").

The same conclusion, that the legislature did not intend to waive use of the courthouse from sovereign immunity, is reached when construing the "dangerous condition" language in section 24–10–103(1). In *Ment-*

*zel v. Judicial Department,* 778 P.2d 323 (Colo.App.1989), the court of appeals interpreted the dangerous condition exception. The court found the language "a physical condition of a facility or the use thereof," related to the "underlying purpose of assuring safe physical conditions in public buildings and facilities. Thus, the [phrase] 'use thereof' relates to the physical condition of public facilities." *Id.* at 325. The court stated that this interpretation was supported by the "reference in section 24–10–103(1) to the public entity's 'act or omission ... in constructing and maintaining such facility.' Such acts or omissions in construction and maintenance relate directly to the physical condition of the facility itself ...," not the use of the facility. *Id.* at 325.

Other jurisdictions with similar or comparable statutes have also reached the conclusion that use of a public building does not fall within their exceptions to sovereign immunity. Michigan has a "dangerous condition of a public building" exception to sovereign immunity which is similar to ours,[2] and the Michigan courts have held that activities in a public building do not fall within the dangerous condition exception to governmental immunity. In *Landry v. City of Detroit,* 143 Mich.App. 16, 371 N.W.2d 466 (1985), *rev'd on other grounds sub nom. Hadfield v. Oakland County Drain Commissioner,* 422 N.W.2d 205 (Mich.1988), the court, in barring claims of witnesses in a judicial proceeding who were attacked by an assailant in the courthouse, rejected an argument that lack of security constituted a dangerous condition which provided an exception under the state immunity act because the injuries stemmed from activities conducted within the building and not from the condition of

---

The term "operation" shall not be construed to include:

(I) A failure to exercise or perform any powers, duties, or functions not vested by law in a public entity or employee with respect to the purposes of any public facility set forth in paragraph (a) of this subsection (3);

(II) A negligent or inadequate inspection or a failure to make an inspection of any property, except property owned or leased by the public entity, to determine whether such

property constitutes a hazard to the health or safety of the public.

2. The Michigan statute states: "Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect...." Mich.Stat.Ann. § 3.996(106) [M.C.L.A. § 691.1406] (Callaghan 1985).

the building itself. *See also Gunn v. Northville State Hosp.*, 171 Mich.App. 669, 430 N.W.2d 815 (1988) (the court rejected the claim of a patient, assaulted by other patients in a mental hospital, finding that the patient's injuries resulted from the act of intervening parties rather than any dangerous or defective condition of the building); *Reardon v. Department of Mental Health*, 430 Mich. 398, 424 N.W.2d 248 (1988) (dangerous condition exception to governmental immunity inapplicable where a student was sexually assaulted by an instructor in a dormitory operated by the Department because the injury was the result of the act of an intervening party rather than a dangerous or defective condition of the building).

Other states have "public building exception" statutes which, while not the same as the Colorado statute, assist in our analysis. In *Johnson v. City of Philadelphia*, 93 Pa.Cmwlth. 87, 500 A.2d 520 (1985), the exception to the sovereign immunity statute provided that acts by an agency which may result in liability include "[t]he care, custody or control of real property in the possession of the local agency...." *Id.* 500 A.2d at 521. Plaintiff was assaulted by intruders while playing in a public recreation center and brought suit against the city claiming that the failure of the city to provide a trained security force was negligent conduct and resulted in his being injured. The court affirmed the dismissal of the complaint holding that plaintiff's action was not within the real property exception to governmental immunity. *See also Rodriquez v. New Jersey Sports & Exposition Auth.*, 193 N.J.Super. 39, 472 A.2d 146 (1983) (court rejected claim by racetrack patron, assaulted and robbed in parking lot, holding that the mere presence of persons with criminal intent or purpose did not constitute a "dangerous condition" within the meaning of the state's tort claim act); *Hayes v. State*, 11 Cal.3d 469, 113 Cal.Rptr. 599, 601, 521 P.2d 855, 857 (1974) (liability imposed for an injury caused by a dangerous condition created by a *combination* of defect in the property and acts of third parties, but not for a dangerous condition resulting solely from harmful third party conduct).

In Missouri, sovereign immunity is waived in cases involving injuries caused by the dangerous condition of public property.[3] In *Kanagawa v. State*, 685 S.W.2d 831 (Mo.1985), the plaintiff was kidnapped, assaulted, and raped by an escaped inmate of a Missouri correctional facility. She alleged that a dangerous condition existed on the prison property because the surrounding fences were inadequate to prevent escape. The court held that the state was not liable because the injuries resulted from the criminal acts of others and not from any dangerous condition of the prison. By way of contrast, in *Alexander v. State*, 756 S.W.2d 539 (Mo.1988), the court found a dangerous condition existed when the plaintiff was injured after falling off a ladder and onto a folding room divider placed at the foot of the ladder. The court held that the "placement of the partition against the ladder created a physical deficiency in the state's property which constituted a 'dangerous condition'." *Id.* at 542.

A majority of courts in other jurisdictions find that public building exceptions to sovereign immunity do not permit recovery for injuries resulting from the action of intervening third parties without the presence of a defective or dangerous condition of the building. New Mexico appears to be an exception to the majority view which has maintained the distinction between physical conditions and uses of governmental buildings. *See Bober v. New Mexico State Fair*, 111 N.M. 644, 808 P.2d 614, 623 (1991). The New Mexico statute, however, gives rise to such an interpretation because, in waiving liability for injuries caused by public employees, it uses the

---

3. The Missouri statute states that sovereign immunity of a public entity is waived for: "Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm ..., and that either a negligent or wrongful act or omission of an employee of the public entity ... created the condition...." Mo.Ann.Stat. § 537.600 (Vernon 1988).

language "in the *operation* or maintenance of any building." N.M.Stat.Ann. § 41–4–6 (Michie 1978) (emphasis added). [4] The term operation suggests the procedures carried out in running the building. Thus, the statute includes more than the physical condition of the building. Furthermore, the statute does not use the words "physical defects" as does the Colorado statute.

Jenks relies on *Peterson v. San Francisco Community College District*, 36 Cal.3d 799, 205 Cal.Rptr. 842, 685 P.2d 1193 (1984), to support his position that a lack of security devices and security personnel was a dangerous condition. In *Peterson*, a college student was attacked while ascending a stairway in the school's parking lot. Although the court held that the college had a duty to exercise care to protect students from reasonably foreseeable assaults on campus and to warn students of known dangers, the court held that the college was immune from liability for failure to provide adequate police protection. *Peterson* is distinguishable for several reasons. First, the duty to warn arose from the special relationship between the college and the student. The special relationship was a result of the college having enrolled the student and issuing her a parking permit, patrolling the parking lot and the stairs due to prior incidents of violence, and inducing the student to rely on this protection. *Id.* 205 Cal.Rptr. at 844, 685 P.2d at 1195. Second, the college was aware of previous attacks on the same stairway and failed to take any protective measures, and finally, the college did not publicize the prior incidents or warn the student of the danger. Here, there was no special relationship between the respondents and Jenks giving rise to a duty to warn. It was not even known that Jenks would be in the courthouse on the day he was injured.

The language in section 24–10–106(1), together with the language defining dangerous condition at section 24–10–103(1), does not waive governmental immunity for ac-

tivities conducted in public buildings. The dangerous condition must stem from a physical or structural defect in the building. By limiting the waiver of sovereign immunity to specified circumstances, the Act protects the public entity against the risk that unforeseen tort judgments will deplete public funds resulting in the termination or curtailment of important government functions. *See Lee v. Colorado Dep't of Health*, 718 P.2d 221, 228 (Colo. 1986).

The undisputed facts fail to show that the physical condition of the courthouse was unsafe for public use on the day that Jenks was injured. The injury arose not from a dangerous physical condition or defect of the building, but from the intervening actions of a third party. Accordingly, we affirm the court of appeals decision.

the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M.Stat. Ann. § 41–4–6 (Michie 1978).

---

**4.** The New Mexico statute states: "The immunity granted ... does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within