Richard Martin LONGBOTTOM,
Plaintiff–Appellant,

v.

STATE BOARD OF COMMUNITY COL-
LEGES AND OCCUPATIONAL EDU-
CATION; Trinidad State Junior College;
Frank Fry; William Stanley, in his ca-
pacity as Dean of Vocational Education
at Trinidad State Junior College; and
Thomas Sullivan, in his capacity as
President of Trinidad State Junior Col-
lege, Defendants–Appellees.

No. 92CA0410.

Colorado Court of Appeals,
Div. II.

May 20, 1993.

Rehearing Denied June 24, 1993.

Certiorari Denied May 2, 1994.

Louis A. Weltzer, David L. Worstell, Den-
ver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T.
Slaughter, Chief Deputy Atty. Gen., Timothy
M. Tymkovich, Sol. Gen., Margaret J. Wal-
ton, Simon P. Lipstein, Asst. Attys. Gen.,
Denver, for defendants-appellees.

Opinion by Judge TURSI.

Plaintiff, Richard Martin Longbottom, ap-
peals from the judgment which dismissed his
claims against defendants, the State Board of
Community Colleges and Occupational Edu-
cation, Trinidad State Junior College, Frank
Fry, William Stanley, and Thomas Sullivan.

We reverse and remand for further proceedings.

The complaint alleges that, on September 15, 1989, while plaintiff was enrolled as a student in a gunsmithing class at Trinidad State Junior College, he suffered the partial amputation of one hand while attempting to operate a jointer machine in the college's machine classroom. It further alleged that defendants were negligent in permitting the classroom premises to be maintained in an unsafe and dangerous condition inasmuch as the jointer machine was not equipped with proper safety guards and defendants permitted students to operate the machines without proper instruction or supervision.

Pursuant to C.R.C.P. 12(b)(1) and 12(b)(5), defendants filed a motion to dismiss the complaint on the basis that the causes of plaintiff's injuries were not among those for which sovereign immunity had been waived pursuant to § 24–10–106(1), C.R.S. (1988 Repl.Vol. 10A). Specifically, the motion asserted that plaintiff's allegations of negligent failure to instruct and supervise did not allege an actionable tort for which immunity had been waived.

It further asserted that no waiver of immunity existed for the claims of negligent hiring and supervision. Finally, it asserted that the claim for unsafe maintenance of the premises based on the machine's lack of safety guards did not fall within the statutory waiver for a "dangerous condition of a public building" in § 24–10–106(1)(c) and § 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A).

Plaintiff filed a response to the motion, asserting that the mere presence of the defective, dangerous, and unguarded machine in the classroom constituted a "dangerous physical condition of a facility" and that negligent training, supervision, and entrustment constituted expected "uses" of the facility within the meaning of § 24–10–103(1).

Defendants filed a reply in which they noted that plaintiff had not alleged that the structure of the building itself was defective. Accordingly, defendants reasserted that immunity had not been waived for plaintiff's claims based upon negligent entrustment and supervision or the presence of a dangerous object within a public building.

The trial court determined that plaintiff's complaint related to the use of a woodworking machine rather than the physical condition of the building itself. Accordingly, it concluded that the alleged facts did not fall within the waiver of immunity in § 24–10–106(1)(c). We disagree.

■■ In ruling on a motion to dismiss for failure to state a claim, the trial court must accept the facts of the complaint as true and determine whether, under any theory of law, plaintiff is entitled to relief. If relief could be granted under such circumstances, the complaint is sufficient. *Schlitters v. State,* 787 P.2d 656 (Colo.App.1989). Furthermore, the immunity created by the Governmental Immunity Act, being in derogation of the common law, must be strictly construed. *State v. Moldovan,* 842 P.2d 220 (Colo.1992).

It is conceded by all parties that the injury sustained by the plaintiff occurred in a public building; therefore, the critical question is whether the injuries also resulted from a *dangerous condition* of any public building. *See* § 24–10–106(1)(c).

As defined in § 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A),

'Dangerous condition' means a physical condition of a *facility or the use thereof which constitutes an unreasonable risk* to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. (emphasis supplied)

■ Statutory words and phrases should be given effect according to their plain and ordinary meaning and the statute must be read and considered as a whole. *People v. District Court,* 713 P.2d 918 (Colo. 1986). It is presumed that the General Assembly has knowledge of the legal import of the words it uses and that it intends each part of the statute to be given effect. *People v. Guenther,* 740 P.2d 971 (Colo.1987).

Moreover, a statute should be interpreted to give consistent, harmonious, and sensible effect to all its parts. *People in Interest of D.L.E.*, 645 P.2d 271 (Colo.1982). Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly. *Charnes v. Boom*, 766 P.2d 665 (Colo.1988).

Hence, if plaintiff's complaint, as fairly read, claims a dangerous condition of a public building, § 24-10-1-6(1)(c), and dangerous condition, as defined by § 24-10-103(1), means the physical condition of a facility or the use thereof, then if a public school building is a facility being put to its intended use, the dismissal of his complaint was improper.

Webster's Third New International Dictionary Unabridged 812 (1976), as pertinent here, defines "facility" as:

> [S]omething that promotes the ease of any action, operation, transaction, or course of conduct ... (excellent facilities for graduate study): something (as a hospital, machinery, plumbing) that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end.

Although plaintiff in his complaint used the word premise instead of facility, he clarified his concept of a facility in his response to the motion to dismiss, and argued that dangerous condition includes the physical condition of a facility or the use thereof. *Cf. Reynolds v. State Board of Community Colleges*, 853 P.2d 539 (Colo.App.1992). Clearly, as pertinent here, the public school building is a facility which had in it a condition dangerous to the expected use thereof.

Here, there is no question that the classroom was part of a facility for use by the students in order to advance their education in gunsmithing, their chosen profession. The jointer was also an integral part of the facility used to serve this particular end. Therefore, we conclude that the complaint and response give sufficient notice to the defendants of the nature of the claim and that the claim stated is within the purview of the Governmental Immunity Act.

Defendants argue that since the word facility is used in the additional waiver of immunity contained in § 24-10-106(1)(e), this in some manner repeals the definition of dangerous condition of any public building as found in § 24-10-103(1) and applied to § 24-10-106(1)(c). We are not persuaded.

Further, the defendants' reliance on *Jenks v. Sullivan*, 826 P.2d 825 (Colo.1992) and *Mentzel v. Judicial Department*, 778 P.2d 323 (Colo.App.1989) is misplaced. Clearly, the intended use of the courthouse in *Jenks* was not to facilitate the criminal act of a third party, nor was the intended use of the probation offices in *Mentzel* to facilitate a drunken party.

The judgment of the trial court is reversed, and the cause is remanded to it for reinstatement of the complaint.

SMITH, Justice,* concurs.

HUME, J., dissents.

*Judge HUME dissenting.*

The majority opinion equates the word "building" as used in § 24-10-106(1)(c), C.R.S. (1988 Repl.Vol. 10A) with the word "facility," and concludes that the presence of a defective and unguarded machine within a school "facility" renders the facility dangerous so as to come within the "public building" waiver of governmental immunity. I disagree with this analysis, and thus, I respectfully dissent.

Plaintiff's complaint asserted claims based upon allegations of negligent hiring, supervision, instruction, and improper maintenance of classroom premises by virtue of the presence and use of a dangerous jointer machine at Trinidad State Junior College. Here, unlike in *Reynolds v. State Board for Community Colleges*, 853 P.2d 539 (Colo.App.1992), plaintiff did not allege, assert, or argue that the jointer machine was a fixture which might be considered a part of the building which housed it.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

Section 24–10–106, C.R.S. (1988 Repl.Vol. 10A), which establishes governmental immunity and creates specific statutory waivers of its application, provides:

(1) [A] public entity shall be immune from liability in all claims for injury which lie in tort ... except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from:

. . . .

(c) A dangerous condition of any public building.

The term "public facility" is used only in § 24–10–106(1)(e), C.R.S. (1988 Repl.Vol. 10A) which provides a waiver of immunity for injuries caused by a dangerous condition of any "public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility," and in § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A), which provides a waiver for injuries caused by the "operation and maintenance of any public water facility, gas facility, sanitation facility, power facility, or swimming facility." It is therefore plain that the General Assembly recognized that the word "facility" is a more comprehensive term than the word "building" and that it intended to use the words selectively rather than interchangeably.

Section 24–10–103(1), C.R.S. (1988 Repl. Vol. 10A) defines only the term "dangerous condition" and does not broaden the waiver of immunity for "public buildings" to include improper activities conducted therein or dangerous equipment and machinery which might be used, housed, or stored in a public building, but which is not a part of the building itself. As our Supreme Court stated in *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo. 1992): "The statute refers to injury arising from the state of the building itself or the use of a state of the building, but not to one arising from activities conducted within the building." *See also Mentzel v. Judicial Department*, 778 P.2d 323 (Colo.App.1989).

Hence, in my view, the trial court correctly interpreted the governmental immunity statute as precluding recovery under the factual averments pled in this case. Accordingly, I would affirm the judgment entered by that court.