LuAnn Ott JILOT, Individually, and
Wayne L. Frank, Individually,
Plaintiffs–Appellants,

v.

STATE of Colorado and Colorado
Department of Transportation,
Defendants–Appellees.

No. 95CA1719.

Colorado Court of Appeals,
Div. IV.

Dec. 12, 1996.

Rehearing Denied Jan. 23, 1997.

Certiorari Denied Oct. 20, 1997.

The Ott Law Firm, P.C., LuAnn Ott Jilot, Denver, for Plaintiffs–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Beverly Fulton, Assistant Attorney General, Jack M. Wesoky, Senior Assistant Attorney General, Denver, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

Plaintiffs, LuAnn Ott Jilot and Wayne L. Frank, appeal from the trial court's dismissal of their complaint, for lack of subject matter jurisdiction, against defendants, the State of Colorado and the Colorado Department of Transportation. Plaintiffs contend that state and federal courts have concurrent jurisdiction for citizen suit actions brought under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901, et seq. (1994), and thus, the trial court erred in dismissing their RCRA claim. They also contend that the trial court erred in determining that their other claims were barred by the doctrine of sovereign immunity as set forth in the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). We affirm in part, reverse in part, and remand with directions.

The State of Colorado owns land in Denver County (the site) that is used by the Colorado Department of Transportation for, among other things, the maintenance and fueling of state vehicles. Plaintiffs own land in the vicinity of the site.

Plaintiffs allege that, beginning in approximately 1977, underground storage tanks, connected to buildings at the site by pipes, were used to store gasoline, diesel, and heating oil for use at the site. They allege that underground tanks were also used to store the various chlorinated solvents and waste materials that were generated by the materials testing, experiments, and other activities conducted at the site.

Plaintiffs allege that before the underground tanks were removed between 1986 and 1992, spillage and leaks from the tanks contaminated soil and water at the site. They further allege that the contaminants have since migrated, and have damaged their property.

Plaintiffs filed suit, claiming that defendants had been negligent in failing to provide environmental and health-risk information to the public, that defendants' failure to comply with state and federal agency regulations constituted negligence *per se*, that the contamination of plaintiffs' property was both a nuisance and trespass, and that the contamination created a "contamination hazard zone." Plaintiffs also claim that defendants were strictly liable for damages to plaintiffs' property because defendants had violated provisions of both the Underground Tank Storage Act, § 25–18–101, et seq., C.R.S. (1989 Repl.Vol. 11A), as then in effect, and RCRA by failing to contain the contaminants.

Pursuant to C.R.C.P. 12(b)(1), defendants filed a motion to dismiss for lack of subject matter jurisdiction, asserting that plaintiffs' RCRA citizen suit claim, brought pursuant to 42 U.S.C. § 6972 (1994), was barred because that provision gives exclusive jurisdiction to the federal courts, and asserting that plaintiffs' remaining claims were barred by sovereign immunity. In response, plaintiffs argued that the citizen suit provision in RCRA provides for concurrent state and federal jurisdiction, and that sovereign immunity had been waived for their claims either because the site was a public gas facility or because the underground tanks constituted a dangerous condition of a public building.

The trial court determined that the federal courts have exclusive jurisdiction over RCRA citizen suit actions and granted the motion to dismiss that claim. The court also determined that it lacked subject matter jurisdiction because plaintiffs' claims did not fall within any waiver of sovereign immunity.

Plaintiffs then filed this appeal.

### I.

Plaintiffs first contend that the trial court erred in its determination that it lacked subject matter jurisdiction over their RCRA claim. We disagree.

State and federal courts have concurrent jurisdiction for federal questions unless Congress affirmatively gives exclusive jurisdiction to the federal courts. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990); *Movitz v. Division of Employment & Training*, 820 P.2d 1153 (Colo.App.1991).

Plaintiffs' contentions to the contrary notwithstanding, in the citizen suit provision of RCRA, Congress affirmatively granted exclusive jurisdiction to the federal courts. *Dublin Scarboro Improvement Ass'n v. Harford County*, 678 F.Supp. 129 (D.Md.1988); *Middlesex County Board v. State of New Jersey*, 645 F.Supp. 715 (D.N.J.1986).

Specifically, 42 U.S.C. § 6972(a) (1994) provides, in pertinent part:

Any action under paragraph (a)(1) of this subsection *shall* be brought in a district court for the district in which the alleged violation occurred or the alleged endangerment occurred. (emphasis added)

This provision refers to federal district courts and could not be more plain. And, "shall" usually means that what is to be done is mandatory rather than discretionary. *United States v. Kravitz*, 738 F.2d 102 (3d Cir.1984) *cert. denied* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). Additionally, the statute explicitly references the federal rules of civil procedure—confirmation that Congress did not contemplate state

court adjudication of RCRA claims. *See* 42 U.S.C. § 6972(e) (1994).

Moreover, the legislative history of RCRA indicates that Congress intended that· only federal courts adjudicate RCRA claims. The committee report reflects the understanding that a federal forum is required for RCRA citizen suits. *See, e.g.,* H.R.Rep. No. 98–198, 98th Cong., 2d Sess. 5 (1983), *reprinted in* 1984 U.S.C.C.A.N. 5576, 5612 ("Although the Committee has not prohibited a citizen from raising claims under state law in a Section 7002 action, the Committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments.").

■ Plaintiffs point out, however, that 42 U.S.C. § 6972(a) also provides:

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf.

Plaintiffs argue that this provision, in its use of the word "may," creates concurrent jurisdiction for RCRA claims. However, this language does not address the question of federal or state jurisdiction at all; rather, it simply confirms that private citizens, under particular circumstances, may sue under RCRA.

## II.

■ Pursuant to the GIA, a claim against the state is initially barred by sovereign immunity if it lies in tort or could lie in tort, regardless of whether that may be the type of action or the form of relief chosen by the plaintiff. *See* § 24–10–105, C.R.S. (1988 Repl.Vol. 10A); *Morrison v. City of Aurora,* 745 P.2d 1042 (Colo.App.1987). And, if a cause of action is barred by sovereign immunity, a court has no subject matter jurisdiction over it and must dismiss it. *State Department of Highways v. Mountain States Telephone & Telegraph Co.,* 869 P.2d 1289 (Colo.1994).

Plaintiffs here do not quarrel with the trial court's determination that their claims lie in tort. Instead, they contend that the trial court incorrectly determined that their tort claims did not fall within one of the waivers of sovereign immunity found in the GIA.

■ Sovereign immunity is in derogation of the common law, and its scope must be strictly construed. *See Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo. 1994). However, sovereign immunity protects public entities against the risk that unforeseen tort judgments will deplete public funds, resulting in the termination or curtailment of important government functions, by limiting waiver to specific categories of claims. *See Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986). Thus, waivers to sovereign immunity should themselves be strictly construed. *See City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996).

### A.

Plaintiffs first contend that the site is a public gas facility under § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A), and thus, immunity has been waived for injuries resulting from its operation and maintenance. We disagree.

■ When construing a statute, we should give words their ordinary meaning, and a word's commonly accepted meaning should be preferred over a strained or forced interpretation. *Jones v. City & County of Denver,* 833 P.2d 870 (Colo.App.1992). Moreover, a court looks at the context in which statutory terms appear, and the meaning of a word may be ascertained by reference to the meaning of words associated with it. *See State v. Hartsough,* 790 P.2d 836 (Colo.1990).

■ Section 24–10–106(1)(f) provides for a waiver of sovereign immunity for injuries resulting from:

> The operation and maintenance of any public water facility, gas facility, sanitation facility, electrical facility, power facility, or swimming facility by such public entity.

We disagree with plaintiffs' argument that, because underground storage tanks contained gasoline and were used to fuel defendant's vehicles, the complex was a "gas facility" under § 24–10–106(1)(f).

Section 24–10–106(1)(f) groups gas facilities with sanitation facilities, water facilities, and other facilities that, with the exception of swimming pools, provide utility-type services directly to the public. In this context, "gas" may not be read to include "gasoline." Gas, in this context, refers to natural gas—a gaseous fuel distributed to the public primarily for use in heating and illumination. *See Black's Law Dictionary* 811 (rev. 4th ed.1968). Gasoline, on the other hand, although referred to in the vernacular as "gas," in fact is a liquid at normal temperatures and is primarily used in internal combustion engines. *See Black's Law Dictionary* 811 (rev. 4th ed.1968).

By placing "gas facility" in the context of other public utilities, the General Assembly has expressed its intent to restrict the definition of that term to include only facilities that distribute natural gas. *See Pack v. Arkansas Valley Correctional Facility*, 894 P.2d 34 (Colo.App.1995) (The GIA places public facilities in discrete groups for the purpose of waiving immunity for similar public entities in a similar manner.); § 24–10–106(1)(a) through § 24–10–106(1)(f), C.R.S. (1988 Repl. Vol. 10A); *see also Jenks v. Sullivan*, 826 P.2d 825, 828 (Colo.1992) ("An examination of the entire statutory section reveals that the legislature intended to waive sovereign immunity only for the operation of specific types of public facilities.").

### B.

Plaintiffs also contend that the trial court erred in its determination that immunity had not been waived for plaintiffs' tort claims because leaking tanks at the site did not constitute a "dangerous condition of any public building" under § 24–10–106(1)(c), C.R.S. (1988 Repl.Vol. 10A). Because we determine that the trial court did not apply the appropriate legal standard, we agree that this issue must be reconsidered.

### 1.

■ As an initial matter, we disagree with plaintiffs' argument to the extent that they contend that the waiver of immunity in § 24–10–106(1)(c) may be merged with that in § 24–10–106(1)(f) to create, in effect, a waiver of immunity for the "operation of public buildings."

Sections 24–10–106(1)(c) and 24–10–106(1)(f) contain distinct waivers of immunity and cannot be so combined. We will not ignore the language of the expressly worded waiver in § 24–10–106(1)(c) and read into that section a waiver for the 'operation' of a public building. *See Jenks v. Sullivan, supra*, 826 P.2d at 828 (noting specifically that "the omission of the term operation in § 24–10–106(1)(c) clearly suggests that the legislature did not intend the operation of the [public building] to be excepted from sovereign immunity"); *Pack v. Arkansas Valley Correctional Facility, supra* (where no explicit waiver of immunity has been granted, the definition may not be expanded so as to create an implied waiver).

### 2.

Under § 24–10–106(1)(c), immunity is properly waived only when an injury arises from "a dangerous condition in any public building." "Dangerous condition" is itself defined in § 24–10–103(1), C.R.S. (1996 Cum. Supp.) as:

[a] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility.

■ Contrary to plaintiffs' contentions, immunity is not waived for injuries resulting from any and all uses of a public building. Rather, it is waived only for injuries arising from the state of the building itself or a use of the state of the building. Specifically, "the dangerous condition must stem from a physical or structural defect in the building" itself. *Jenks v. Sullivan, supra*, 826 P.2d at 830.

■ Ultimately, then, the determination here whether the underground tanks constitute a dangerous condition of a public building, thus giving rise to a waiver of immunity under § 24–10–106(1)(c), depends on whether the tanks were part of a building at the site.

In other words, the question is whether the tanks were installed in or annexed to the building as a fixture. And, the general tests for determining whether an object is a fixture are (1) annexation to the real property; (2) adaptation to the use to which the real property is devoted; and (3) intention that the object become a permanent accession to the real property or a permanent structure on the real property. *Reynolds v. State Board for Community Colleges & Occupational Education*, 937 P.2d 774 (1996).

Here, plaintiff alleged that the tanks were connected to the buildings by pipes and that the various fuels and fluids routinely flowed to and from tank and building. However, because the trial court did not have the benefit of the *Reynolds* decision, it made no finding as to whether any of the underground tanks were fixtures. Hence, because such a finding is required to resolve whether plaintiffs' claims are barred by sovereign immunity, we must remand for a determination whether the underground tanks were fixtures of buildings at the site.

On remand, in order to determine whether there is subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), the trial court may hold a further evidentiary hearing on this issue. The court may receive and weigh any competent evidence pertaining to the motion to dismiss; it need not take all allegations as true or draw all inferences in the light most favorable to the plaintiff. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993). Also, the trial court's determination whether sovereign immunity bars plaintiffs' remaining claims is a final judgment and is subject to interlocutory appeal. *See* § 24–10–108, C.R.S. (1996 Cum.Supp.); *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996).

Accordingly, the judgment is affirmed as to the determination that state courts do not have subject matter jurisdiction over RCRA citizen suits and is affirmed as to the determination that the site was not a gas facility under § 24–10–106(1)(f), but is reversed as to the determination that the underground tanks were not part of a public building. The cause is remanded to the trial court with directions to determine, in accordance with this opinion, whether any of the underground tanks were fixtures of the buildings at the site, and for further proceedings if necessary.

NEY and CASEBOLT, JJ., concur.