Mae E. SEDER, Plaintiff–Appellant,

v.

CITY OF FORT COLLINS, Defendant–Appellee.

No. 98CA0330.

Colorado Court of Appeals, Div. III.

April 1, 1999.

Certiorari Denied Nov. 8, 1999.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998.

Erik G. Fischer, LLP, Erik G. Fischer, Fort Collins, Colorado, for Plaintiff–Appellant.

Wick Campbell Bramer Ukasick & Trautwein, LLC, Kent N. Campbell, Julie Klaus, Fort Collins, Colorado, for Defendant–Appellee.

Opinion by Justice ERICKSON.[*]

In this negligence action against defendant, City of Fort Collins, plaintiff, Mae E. Seder, appeals from the trial court's dismissal of her complaint as barred by governmental immunity. We affirm in part, vacate in part, and remand with directions.

Plaintiff brought this action seeking compensation for injuries she sustained when she allegedly slipped and fell on ice on a sidewalk outside of a recreation center owned and maintained by the City. The complaint asserts that she exited from the building and the pool area after completing a water aerobics class. The ice was located adjacent to a vent from the building that discharged warm, humid air over the sidewalk. As a result of her fall, plaintiff broke her leg in three places, was wheelchair bound for approximately six months, and incurred over $30,000 in medical expenses.

The City moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.1998. In response, plaintiff asserted that the City's immunity was waived pursuant to: (1) § 24–10–106(1)(c), C.R.S.1998, for a "dangerous condition of any public building"; (2) § 24–10–106(1)(d)(III), C.R.S.1998, for a "dangerous condition caused by an accumulation of snow and ice which physically interferes with public access on walks leading to a public building open for public business ...."; and (3) § 24–10–106(1)(f), C.R.S.1998, for the "operation and maintenance of any public ... swimming facility."

The trial court granted the City's motion finding that plaintiff had failed to establish that the City's immunity was waived under any of the three provisions relied upon by plaintiff. The court stated that merely because plaintiff fell outside a building that contained a swimming pool, neither the swimming pool nor building posed a risk to the safety of the public.

The affidavits established that it had snowed shortly before plaintiff's fall and that there was snow and ice in several spots around the facility particularly in areas, similar to the area where plaintiff fell, which were shaded. Hence, the court declared that the existence of snow and ice, by itself, did not constitute a dangerous condition.

Although the court found that the location of the vent might have indicated a poor design, a dangerous condition does not exist solely because of the design of a building. Thus, the court concluded that "plaintiff had not shown that but for the venting of air from the pool area there would not have been ice on the sidewalk."

Accordingly, the court determined that the City's immunity was not waived under either § 24–10–106(1)(c) or § 24–10–106(1)(f).

As to whether the City's immunity was waived under § 24–10–106(1)(d)(III), the

---

[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. IV, Sec. 5(3), and § 24-51-1105, C.R.S.1998.

court found that plaintiff had failed to establish that the City had actual notice that there had been a problem with ice on the sidewalk on the day she fell. Therefore, it concluded that plaintiff did not make the necessary showing under that provision.

On appeal, plaintiff contends that the trial court erred in finding that the City's immunity was not waived under any of three provisions she relied upon. Alternatively, plaintiff argues that the trial court erred in failing to allow her to engage in limited discovery on whether the City had "actual notice" of the ice. We conclude that the trial court properly found that the City's immunity was not waived under § 24–10–106(1)(c) or under § 24–10–106(1)(f). However, in our view, the trial court should have allowed plaintiff to conduct limited discovery on whether the City had "actual notice" of the ice for purposes of § 24–10–106(1)(d)(III). Thus, the court's judgment as to this issue must be vacated.

### I. *Applicable Standards*

Except in certain limited circumstances, the GIA provides that a governmental entity is immune from liability for all actions which lie in tort or could lie in tort. *See* §§ 24–10–105, 24–10–106 and 24–10–108, C.R.S.1998; *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996); *Bresciani v. Haragan*, 968 P.2d 153 (Colo.App.1998).

A motion to dismiss under the GIA involves the trial court's subject matter jurisdiction to hear the action and is properly resolved pursuant to C.R.C.P. 12(b)(1). *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo.1997). The burden of proving subject matter jurisdiction under the GIA is on the plaintiff. *Capra v. Tucker*, 857 P.2d 1346 (Colo.App.1993).

Under C.R.C.P. 12(b)(1), the trial court is the fact finder and may hold an evidentiary hearing to resolve any factual dispute upon which the existence of the court's subject matter jurisdiction under the GIA may turn. *See Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995). The trial court's resolution of any disputed facts pertaining to its jurisdiction under the GIA is reviewed under a clearly erroneous standard. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993); *Delk v. City of Grand Junction*, 958 P.2d 532 (Colo.App.1998).

With regard to discovery, § 24–10–108 of the GIA provides that:

If a public entity raises the issue of sovereign immunity prior to or after the commencement of discovery, *the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity,* and shall decide such issue on motion. (emphasis added)

### II. *Public Building Exception*

Under § 24–10–106(1)(c), a public entity's immunity is waived for a "dangerous condition of a public building." The term "dangerous condition" is defined as:

[A] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility. For the purposes of this subsection (1), a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate. The mere existence of wind, water, snow, ice, or temperature shall not, by itself, constitute a dangerous condition.

Section 24–10–103(1), C.R.S.1998.

The supreme court has held that the dangerous condition "must stem from a physical or structural defect in the building." *Jenks v. Sullivan*, 826 P.2d 825, 830 (Colo.1992)(alleged negligent failure to provide security in

a courthouse did not constitute a dangerous condition of a public building). *Cf. Walton v. State,* 968 P.2d 636 (Colo.1998)(supreme court upheld the trial court's determination that a combination of a slippery floor, use of a portable ladder, and inaccessibility of a storage space in which maintenance was performed constituted a dangerous condition of a public building); *see also Stanley v. Adams County School District No. 27J,* 942 P.2d 1322 (Colo.App.1997)(sand, gravel, and water located on a driveway outside a public school building did not constitute a physical or structural defect of the building because it did not originate from the building itself).

As the trial court found, the recreation center was constructed so that warm, humid air from the pool area was vented outside adjacent to the location where plaintiff fell. In its order, however, the trial court did not specifically determine whether the vent contributed to the formation of ice on the sidewalk. Instead, the court only concluded that plaintiff had not shown that the discharge of air from the vent was the sole cause of the ice.

If we assume, arguendo, that the formation of ice was partially or completely attributable to the venting of the air from the building, then the issue becomes whether the venting could constitute a dangerous condition of a public building.

As noted, the supreme court in *Jenks v. Sullivan, supra,* held that a dangerous condition must stem from a physical or structural defect of the building. The alleged defect here was that the venting of warm, humid air, when combined with cold temperatures and precipitation, caused or contributed to the formation of ice on the sidewalk. Plaintiff, however, did not allege and the record does not indicate that either the vent itself or the air being discharged from the vent was hazardous. As such, the ice was not directly caused by, or attributable to, a physical or structural defect of the building. Rather, at most, the ice was an indirect effect of the design of the building.

Therefore, under these circumstances, we conclude that plaintiff's injuries did not result "from the state of the building itself or the use of a state of the building." *Jenks v.* *Sullivan, supra,* 826 P.2d at 827; *see also Stanley v. Adams County School District No. 27J, supra* (court noted that the General Assembly's amendment of the GIA in 1992 to include § 24–10–106(1)(d)(III), for dangerous conditions on public walks, would have been unnecessary if it had intended for the public building exception in § 24–10–106(1)(c) to apply to such circumstances).

Hence, for the foregoing reasons, we conclude that the trial court did not err in determining that the City's immunity was not waived under § 24–10–106(1)(c).

### III. *Operation and Maintenance of a Swimming Facility*

■ Under § 24–10–106(1)(f), a public entity's immunity is waived for the "operation and maintenance of any public ... swimming facility."

The term "operation" is defined as:

[T]he act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any public ... swimming facility.

Section 24–10–103(3)(a), C.R.S.1998.

The term maintenance is not defined in the GIA. The supreme court, however, adopting this court's construction of the term, has defined "maintain" as follows:

[K]eeping a constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency as initially constructed.

*Swieckowski v. City of Fort Collins, supra,* 934 P.2d at 1385.

The plaintiff fell outside a recreation building that contained a swimming pool. There is evidence that the pool was being operated and maintained as it was originally designed and constructed.

Therefore, because there is record support for the trial court's determination that the City's immunity was not waived under § 24–10–106(1)(f), we will not disturb that determination on review. *See Walton v. State, supra.*

## IV. *Accumulation of Snow and Ice*

■ Pursuant to § 24–10–106(1)(d)(III), a public entity's immunity is waived for:

A dangerous condition caused by an accumulation of snow and ice which physically interferes with public access on walks leading to a public building open for public business when a public entity fails to use existing means available to it for removal or mitigation of such accumulation and when the public entity had actual notice of such condition and a reasonable time to act.

The term "actual notice" is not defined in the GIA. However, a division of this court, in reference to the priority of a mechanic's lien, has stated that:

'[A]ctual notice' is such notice as is positively proved to have been given to a party directly and personally, or such as the party is presumed to have received personally because the evidence within the party's knowledge˙ was sufficient to put the party upon inquiry.

*Powder Mountain Painting v. Peregrine Joint Venture,* 899 P.2d 279, 281 (Colo.App. 1994).

In moving to dismiss plaintiff's complaint, the City attached an affidavit from the head of maintenance for the facility. This individual stated that he had not been notified that there were any problems with ice near where plaintiff fell on the morning of her accident.

In response, plaintiff submitted her affidavit and affidavits of other individuals regarding whether the City had "actual notice" of the ice. In particular, plaintiff stated that it was her understanding that the maintenance staff had actual notice of the problem with ice forming on the sidewalk.

Plaintiff also submitted an affidavit from a former water aerobics instructor at the facility who stated that there had been a long history of ice forming on the sidewalk because of the humidity from the venting of the pool. She stated that she had fallen on ice at the same location on the sidewalk. She also stated that it was her experience that ice formed at that point whenever there was rain or snow with freezing temperatures.

Plaintiff also included an affidavit from a visitor to the facility who had heard plaintiff fall. The visitor stated that: "It was obvious to anyone entering the building that the sidewalk used by people to exit the pool on the northwest side of the building was covered with ice as it declined (sloped) from the building." She also stated that the sidewalk had no substance, such as salt or ice melter, to inhibit the formation of ice. Finally, she stated that it was her opinion that:

[A]ny employee of the City of Fort Collins that had used either the front door or this northwest exit door would have had actual notice of this dangerous condition as a visual observation of the area [sic] would have certainly provided those employees with notice.

Plaintiff also requested that she be permitted to conduct discovery as to whether the City had "actual notice" of the ice if the trial court was inclined to grant the motion to dismiss. Although plaintiff asserted that she believed that the court could uphold the exercise of jurisdiction without an evidentiary hearing, she argued that she should be given a full and fair opportunity to present all evidence on this issue. Plaintiff asserted that she should not be prejudiced by a lack of discovery on the issue of the City's actual notice of the ice. .

In reply, the City submitted affidavits from various employees at the facility regarding their knowledge of ice on the sidewalk on which plaintiff fell. The facility's program administrator, although not present on the day plaintiff fell, attested to the standard maintenance practices used at the facility. The former pool manager at the facility stated that, to his knowledge, no one had reported that there were problems with ice on the sidewalk on the day of the accident. The facility's aquatic supervisor stated that many employees parked their cars on the east side of the building and would not have seen the ice on the northwest part of the building where plaintiff fell.

Lastly, the City included a counter-affidavit from the water aerobics instructor who stated that her fall on the sidewalk occurred approximately a year before plaintiff's fall. She also stated that ice did not always form

on the sidewalk and that when she observed any ice she would tell the head of maintenance who would promptly put salt on it.

Based on the evidence submitted, an issue of fact existed regarding whether the City had actual notice of the icy condition that allegedly caused plaintiff's fall.

As the trial court recognized in its order, ice was present in several locations around the recreation center especially in locations, such as where plaintiff fell, and where it was shady. The trial court determined, however, that plaintiff had failed to establish that the City had actual notice of the icy condition.

In making its ruling, the trial court did not permit plaintiff to conduct additional discovery, nor did it conduct an evidentiary hearing on the issue of actual notice. As such, plaintiff was not able to challenge the statements or the credibility of the affiants relied upon by the City.

Given the preclusive effect of the trial court's resolution of subject matter jurisdiction under the GIA, which involves consideration of issues going to the merits of plaintiff's claims, we conclude that the trial court should have permitted plaintiff to engage in discovery on the issue of actual notice and conducted an evidentiary hearing, if warranted. *See* § 24–10–108 ("the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity."); *Trinity Broadcasting of Denver, Inc. v. Westminster, supra,* 848 P.2d at 926 (court held that an evidentiary hearing would have "permitted the full development of a factual record and determination of the proper legal test to be applied.").

Although we may decide the issue of immunity as a matter of law if all the relevant evidence has been presented and the facts are not disputed, *see Swieckowski v. City of Fort Collins, supra,* we find that those circumstances are not present as to the issue of waiver under § 24–10–106(1)(d)(III). Therefore, under these circumstances, we conclude that the trial court's judgment must be vacated to permit discovery as to whether the City's immunity was waived under § 24–10–106(1)(d)(III).

The judgment is affirmed in part, vacated in part, and the cause is remanded for further proceedings consistent with this opinion. Upon remand, the trial court should allow for development of a full factual record and should make the requisite factual findings in determining whether the City's immunity was waived under §§ 24–10–106(1)(d)(III).

Judge MARQUEZ and Judge ROY concur.