Shayne PADILLA, through her legal guardians and next friends, Mariano Padilla and Michelle PADILLA, Petitioner,

v.

SCHOOL DISTRICT NO. 1 IN THE CITY AND COUNTY OF DENVER, Colorado; The Denver School District Board of Education, Respondents.

No. 99SC862.

Supreme Court of Colorado, En Banc.

June 11, 2001.

Law Office of Kathleen Mullen, P.C., Kathleen Mullen, Denver, CO, Attorney for Petitioner.

Semple, Miller & Mooney, P.C., Patrick B. Mooney, Denver, CO, Attorney for Respondents.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, CO, Attorney for amicus curiae Colorado Trial Lawyers Association.

Justice HOBBS delivered the Opinion of the Court.

The Colorado Governmental Immunity Act (CGIA) waives the defense of governmental immunity in an action for damages due to injuries resulting from "a dangerous condition of any public building." *See* § 24–10–106(1)(c), 7 C.R.S. (2000). Petitioner Shayne Padilla (Padilla) through her parents brought a negligence action against School District No. 1 of the City and County of Denver and the Denver School District Board of Education (School District), asserting that she sustained injuries resulting from a dangerous condition of a public building. We granted certiorari review of the court of appeals' decision in *Padilla v. School District No. 1,* 1 P.3d 256 (Colo.App.1999), to determine whether Padilla may proceed with her negligence action in light of the CGIA.[1] We hold that Padilla failed to show jurisdictional facts sufficient for application of the immunity waiver. Accordingly, we affirm the judgment of the court of appeals upholding the trial court's order dismissing the action.

## I.

Padilla, a ten-year-old developmentally disabled child, suffered from serious medical conditions for which she had frequently been subject to hospitalization, blood draws, and invasive medical procedures. Due to such procedures, she associated physical restraint with pain and became frightened and agitated when restrained, pulled, or grabbed.

Her mother informed personnel of the Denver Public Schools (DPS) that Padilla should not be pulled or restrained. She provided a stroller for transporting Padilla to avoid pulling or dragging her.

On February 12, 1997, Padilla refused to eat her lunch, and became agitated when DPS employees tried to get her to eat. DPS employees placed Padilla in her stroller and propped the stroller out of their line of sight against an open door of a closet adjoining the classroom. Padilla became agitated, the stroller fell backward, and Padilla struck her head against the floor, fracturing her skull.

Padilla brought suit for negligence against the School District. The School District moved to dismiss under C.R.C.P. 12(b)(1), on the grounds that it was immune from suit under the CGIA. In response to the motion to dismiss, Padilla set forth her alleged jurisdictional facts through proposed findings of fact, asking in the alternative that the court hold an evidentiary hearing in the event that the court did not accept her proposed findings of fact for jurisdictional purposes.

Padilla's proposed findings recited, in part, that the "Centennial Elementary School staff used the stroller and the storage closet as a place of restraint and 'time out' without Mrs.

---

1. We granted certiorari on the following issues:

 (1) Whether the court of appeals erred in determining that the negligent use and maintenance by public employees of a windowless storage closet with a hard tile floor as a seclusion room for an agitated, disabled child does not constitute negligent "maintenance" of the facility for the purposes of the "dangerous condition of a public building" exception to the Colorado Governmental Immunity Act (CGIA).

 (2) Whether this court should resolve the apparent split of authority among divisions of the court of appeals regarding the proper interpretation of the CGIA "dangerous condition of a public building" waiver provision, including the rule in *Hendricks v. Weld County Sch. Dist.,* 895 P.2d 1120 (Colo.App.1995), which is in direct contradiction to the majority decision in this case.

 (3) Whether this court's adoption in *Walton v. State,* 968 P.2d 636 (Colo.1998) of the "deferential construction in favor of the victim" standard for interpretation of the CGIA waiver

provisions overruled the "narrow" construction of waiver provisions standard set forth in *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996).

 (4) Whether the court of appeals erred in failing to apply, consistent with *Walton v. State,* a narrow construction of the immunity provision of the CGIA and in failing to accord deferential construction of the CGIA's waiver provisions in favor of the plaintiff who was seriously injured by the negligence of governmental agents.

 (5) Whether the court of appeals erred in affirming the district court's refusal to permit an evidentiary hearing in accordance with *Trinity Broadcasting of Denver v. City of Westminster,* 848 P.2d 916 (Colo.1993), when both the defendants' Motion to Dismiss and the district court's ruling failed to consider or accept as true all of the relevant facts asserted in plaintiff's complaint, and plaintiff specifically requested such a hearing in order to create a full factual record to establish compliance with the jurisdictional requirements.

Padilla's knowledge or consent" and the "Centennial staff isolated [the child] inside the storage closet and used the door and wall next to the open doorway as a means of securing the stroller from toppling over." The child became "more agitated, frustrated, and upset" and "[t]he stroller toppled backward, causing [the child] to hit her head on the floor of the open doorway, resulting in a skull fracture." Padilla further alleged that immunity was waived because the "placement of [the child's] stroller combined with the use of the storage room without a window or line of sight created a dangerous condition in a public building."

The trial court granted the motion to dismiss without an evidentiary hearing. In its order of dismissal, the trial court recited the jurisdictional facts as follows:

> For the purpose of this order, the Court accepts plaintiff's version of facts.

> Plaintiff is a ten-year-old disabled child with various medical conditions. Defendants are the school district and board of education where plaintiff attends school.

> Because of plaintiff's association with painful medical procedures, plaintiff becomes frightened and agitated when restrained. To prevent school personnel from forcibly pulling or dragging plaintiff, Mrs. Padilla supplied a stroller for transporting plaintiff. Mrs. Padilla did not authorize the use of the stroller for physical restraint. On February 12, 1997, because plaintiff refused to eat her lunch defendants' employees put plaintiff in her stroller that was placed in a storage closet against an open door. The door was used as a backstop for the stroller. However, plaintiff became agitated and the stroller toppled backward into the open doorway causing plaintiff to hit her head on the floor.

In granting the motion to dismiss, the trial court focused on Padilla's failure to prove or allege facts coming within the immunity waiver, because she did not link the use of the facility with a construction or maintenance activity:

> Thus, in order to prove a waiver of sovereign immunity under C.R.S. § 24–10–106(1)(c), plaintiff must prove that the po-

sitioning of the stroller was (1) a physical condition of a facility or use thereof; (2) an unreasonable risk to the health or safety of the public; (3) known to exist or which should have been known to exist; and (4) proximately caused by the negligent act or omission in constructing or maintaining such facility. *Plaintiff has failed to prove or even allege any facts to support a finding that positioning the stroller was caused by constructing or maintaining this facility.*

(Emphasis added.)

Summing up its determination, the trial court said, "Plaintiff's case is wholly premised on the positioning of the stroller. Nothing in plaintiff's case supports a finding that plaintiff's injuries were caused by construction or maintenance of the school."

The court of appeals affirmed, holding that negligent use of the closet as a seclusion room did not constitute negligent "maintenance" of the facility for the purposes of the "dangerous condition" exception. *Padilla,* 1 P.3d at 259. The court's majority characterized Padilla's claims as alleging not "negligent maintenance" but "improper actions on the part of the school staff in placing the child out of their line of sight." *Id.* at 260. The majority also determined that the trial court had not erred in refusing to grant an evidentiary hearing before ruling on the School District's motion to dismiss. *Id.* at 259.

We agree and affirm the judgment of the court of appeals.

## II.

We hold that Padilla did not allege sufficient jurisdictional facts associating her injuries with actions or omissions of the School District in constructing or maintaining the facility.

### A.

#### The CGIA Jurisdictional Inquiry

■ The General Assembly enacted the CGIA in 1971 in response to a trilogy of cases abrogating Colorado's common law of

governmental immunity. *See* ch. 323, sec. 1, §§ 130–11–1 to –17, 1971 Colo. Sess. Laws 1204, 1204–11; *Evans v. Board of County Comm'rs,* 174 Colo. 97, 105, 482 P.2d 968, 972 (1971) (abrogating common law sovereign immunity and recognizing that the legislature could reestablish governmental immunity by statute). The CGIA establishes immunity from suit for public entities and their employees in tort cases, but then waives immunity under certain circumstances and also provides exceptions to certain waivers. *Springer v. City & County of Denver,* 13 P.3d 794, 798 (Colo.2000); § 24–10–106.

The CGIA derogates Colorado's common law. Consequently, we strictly construe the statute's immunity provisions. *See Springer,* 13 P.3d at 798; *Bertrand v. Board of County Comm'rs,* 872 P.2d 223, 227 (Colo. 1994). As a logical corollary, we broadly construe the provisions withholding immunity in the interest of compensating victims of governmental negligence. *Springer,* 13 P.3d at 798; *Corsentino v. Cordova,* 4 P.3d 1082, 1086 (Colo.2000); *Walton v. State,* 968 P.2d 636, 643 (Colo.1998).

A C.R.C.P. 12(b)(1) motion to dismiss on grounds of immunity under the CGIA raises a jurisdictional issue; the plaintiff has the burden of demonstrating jurisdiction. *See Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924–25 (Colo.1993). When the alleged jurisdictional facts are in dispute, the trial court should conduct an evidentiary hearing before ruling on the jurisdictional issue. *See Fogg v. Macaluso,* 892 P.2d 271, 276 (Colo.1995). Where there is no evidentiary dispute, governmental immunity or waiver of immunity is a matter of law, and the trial court may rule on the jurisdictional issue without a hearing. *See Corsentino,* 4 P.3d at 1087; *Swieckowski v. City of Fort Collins,* 934 P.2d 1380, 1384 (Colo.1997).

Here, the trial court accepted all of Padilla's assertions of fact as true; consequently, it did not abuse its discretion in proceeding to rule on the School District's motion to dismiss without convening an evidentiary hearing.

## B.
### Waiver for Dangerous Condition of Any Public Building

### 1. Construction or Maintenance Nexus

Section 24–10–106(1)(c) provides that "[s]overeign immunity is waived by a public entity in an action for injuries resulting from ... [a] dangerous condition of any public building." The CGIA further defines "dangerous condition" as

> a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining the facility. Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility .... A dangerous condition shall not exist solely because the design of any facility is inadequate.

§ 24–10–103(1), 7 C.R.S. (2000).

We give effect to legislative intent in construing the CGIA provisions for immunity, waiver, and exception to waiver. *Springer,* 13 P.3d at 799; *Walton,* 968 P.2d at 644. We look to the statutory language, giving the words and phrases their plain and ordinary meaning. *Walton,* 968 P.2d at 644.

The CGIA sets forth a four-factor test for determining the existence of a dangerous condition of a public building. The waiver of immunity applies if the alleged injuries occurred as a result of: (1) the physical condition of a public facility or the use thereof; (2) which constitutes an unreasonable risk to the health or safety of the public; (3) which is known to exist or should have been known to exist in the exercise of reasonable care; and (4) which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining the facility. § 24–10–103(1); *Springer,* 13 P.3d at 799; *Walton,* 968 P.2d at 644. Additionally, the condition must be associated with construction or maintenance,

not solely design. § 24–10–103(1); *Swieckowski*, 934 P.2d at 1386.

In *Walton*, utilizing the canon of broad construction for immunity waivers, we said "[l]iability attaches for injury stemming from the public's use of a dangerous or defective physical condition of the building" and the "linchpin of our 'use' inquiry ... is that 'the statute refers to an injury arising from the state of the building itself or *the use of a state of the building*.'" *Walton*, 968 P.2d at 645 (quoting *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo.1992)) [2] (emphasis in *Walton*). Nonetheless, to be actionable, the state of the building or use of a state of the building and the injury resulting therefrom: (1) must have occurred in connection with a negligent act or omission of the governmental entity, not a third party; (2) must be associated with "constructing" or "maintaining" the facility; and (3) must not be solely due to the facility's design. *See Walton*, 968 P.2d at 644.

In *Walton*, we described the dangerous condition as a combination of physical facts involving the use of an unsecured ladder on a slippery floor to access a loft for maintenance, and we explained that the governmental entity had caused the dangerous condition resulting in the injury:

> Walton's injuries were not solely due to inadequate design of the building. There was no evidence presented to the trial court that the space between the two ceilings was designed to serve as a storage area. While the State was under no obligation to upgrade the design of the ceilings, use of the space by the university for storage required a means of maintenance and the institution of maintenance practices that did not pose an unreasonable risk of injury to members of the public.

*Id.* at 645.

Distinguishing *Jenks*, we stated in *Walton* that "the negligent act or omission of the State—not a third party—caused the dangerous condition that resulted in Walton's injuries." *Id.* We concluded that Walton's "use and injury was, in the words of the statute, 'proximately caused by the negligent act or omission of the public entity in ... maintaining the facility.'" *Id.* (quoting § 24–10–103(1)) (omission in original).

Our discussion in *Walton* distinguishing *Jenks* demonstrates that the case-by-case jurisdictional inquiry methodology requires courts to take into account varying definitions of "physical condition," "constructing," and "maintaining." For example, in discussing a "physical condition" in *Jenks*, we referred to a "structural defect in the building." *Jenks*, 826 P.2d at 830. While such a structural defect is a "physical condition" within the immunity waiver, we held in *Walton* that this term also includes other physical conditions that the governmental entity creates in association with constructing or maintaining a facility. *Walton*, 968 P.2d at 644.

Furthermore, within *Jenks* itself, we expressed varying formulations of the term "physical condition." The first prong of the four-pronged definition of "dangerous condition" contains the words "physical condition of a facility or the use thereof." § 24–10–103(1). Although in *Jenks* we said the words "use thereof" in that phrase modify "physical condition," we then employed a broad description of "physical condition" to include a "[m]ode or state of being; state or situation." *Jenks*, 826 P.2d at 827. This broad description is all the more significant because *Jenks* employed a narrow construction of immunity waivers.[3] Because we now afford deferential construction to immunity waivers in the CGIA, we continue to give broad scope to the term "physical condition," as evidenced in *Walton*. *See Springer*, 13 P.3d at 798; *Walton*, 968 P.2d at 643.

Similarly, in *Swieckowski*, we used a definition of "maintain," not to narrow the construction of this word to a single

---

2. *Jenks* involved the firing of a gun by an intervening third party in a public building. We held that an act of a third party was insufficient to create a dangerous condition of a public building under the CGIA, and that "the statute refers to an injury arising from the state of the building itself or the use of a state of the building, but not to one arising from activities conducted within the building." 826 P.2d at 827.

3. We have since overruled this part of the *Jenks* opinion. *See Bertrand*, 872 P.2d at 227.

meaning but, rather, to point out that the allegations there amounted only to a design defect. We said " 'maintain' is defined as keeping a constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency *as initially constructed."* *Swieckowski,* 934 P.2d at 1385 (emphasis in original). However, we did not intend to circumscribe the jurisdictional inquiry to this one meaning. Broadly construed, "maintenance" encompasses ongoing repair and upkeep of the facility as it is put to the original, additional, or different uses than originally constructed.[4] Similarly, "constructing" includes the facility as originally constructed but also encompasses permanent or temporary alterations to the facility made during its ensuing lifetime in service to the public.[5]

In some circumstances, "constructing" and "maintaining" can apply to the same set of facts. In *Walton,* for example, the governmental entity "constructed" a temporary access to a loft not designed for a storage space and asked members of the public to clean it, a "maintenance" activity. *See* 968 P.2d at 645. Likewise, "constructing" and "maintaining" potentially intersected in *Springer.* There, we held that the plaintiff's negligence action could proceed on theories of either construction or maintenance or both. *Springer,* 13 P.3d at 805. We thus gave effect to the Premises Liability Statute, section 13–21–115, 5 C.R.S. (2000). The plaintiff in *Springer* alleged that the public entity had negligently failed to fix a protruding plate in a door entrance, which existed by reason of construction not in accordance with the building's design, or because the plate began to protrude after construction and was not corrected. *See id.* at 804. We determined that the "premises liability statute applies to the [governmental entity] as a landowner by reason of the CGIA's immunity waiver for dangerous conditions associated with construc-

tion or maintenance of the building." *Id.* at 805.

In *Swieckowski,* in contrast to *Walton* and *Springer,* the facts before the court demonstrated that the accident occurred because of the facility's design. The plaintiff's case, we said, amounted to an argument that the governmental entity was responsible for "an accident waiting to happen." *Swieckowski,* 934 P.2d at 1387. There simply was no showing of any governmental negligence associated with "constructing" or "maintaining" the facility, apart from alleged design defects of the enlarged roadway shoulder on which plaintiff was riding his bicycle. We observed that the statute excluded from "maintaining" any necessity of the public entity to "upgrade, modernize, modify, or improve the design or construction of a facility." *Id.* at 1385. We did not address in *Swieckowski* a situation where the governmental entity undertook to upgrade, modernize, modify, or improve the design or construction of the facility and did so negligently.

2. Padilla's Insufficient Jurisdictional Facts

 In this case, Padilla argues that "her serious injuries directly resulted from the conversion and use by school personnel of the windowless storage closet as a seclusion room for disabled children." On the issue of whether the alleged negligence was associated with actions or omissions of the School District in constructing or maintaining the facility, Padilla asserts that "the use of the storage closet by school employees as a seclusion room required that the room be maintained in a manner that did not pose an unreasonable risk of injury to members of the public."

In answer, the School District contends that: (1) "a 'dangerous condition' is a physical condition (or the use of that condition) which constitutes an unreasonable risk,

---

4. Broadly construing the immunity waiver provisions, as we must, meanings of "maintain" include "to keep in a state of repair, efficiency, or validity: preserve from failure or decline." *Webster's Third New International Dictionary* 1362 (1993). "Maintenance" includes "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency: CARE, UPKEEP." *Id.*

5. Definitions of "construct" include "to form, make or create by combining parts or elements." *Id.* at 489. Definitions of "construction" include "the act of putting parts together to form a complete integrated object: FABRICATION" as well as "something built or erected: STRUCTURE." *Id.*

which is actually or constructively known to exist, and which is caused by negligent construction or maintenance;" and (2) "Plaintiff's alleged injuries resulted not from the state of the building or even the use of the building; they resulted from the use of the stroller."

Like the trial court, the court of appeals focused on Padilla's failure to show jurisdictional facts associating the alleged negligence with actions of the School District in constructing or maintaining the facility. The court of appeals held that "negligent use of the storage closet as a seclusion room would not constitute negligent 'maintenance' of the facility for purposes of the 'dangerous condition' exception." *Padilla*, 1 P.3d at 259. Rather, it determined that the substance of Padilla's negligence action was the failure of School District employees to keep Padilla within their line of sight so they could take action to prevent her from falling out of the stroller. *Id.* at 260. The court of appeals explained, "the dangerous physical condition must be proximately caused by the negligent act or omission of the public entity in constructing or maintaining the public facility." *Id.* at 259. We agree with the court of appeals.

Padilla argues that the case before us parallels *Walton:*

> In *Walton*, it is the university's conversion of an empty space above the ceiling in the art studio to serve as a storage area which required the public entity to ensure a safe way to clean or maintain the area. Thus, as here, it is the particular use of the physical structure of the building—converting a windowless storage closet with a hard tile floor to a seclusion room—by public employees that created the dangerous condition of the public building.

While Padilla may have sufficiently alleged an act of negligence, leaving a disabled and distraught child out of sight and reach in an unstable stroller, we conclude that she did not demonstrate a sufficient connection between use of the state of the building and a construction or maintenance activity or omission for which the School District is responsible. Padilla's theory of the case only amounts to a claim that the School District should have upgraded the design of the clos-

et if it wished to use it as a "time out" room for students exhibiting disruptive behavior. This is inadequate to effectuate the waiver. *See Swieckowski*, 934 P.2d at 1386–87 (holding that design of the widened area of the road used by the victim for riding his bike was sole reason for the injury).

## III.

Padilla merely alleged that the government used the facility in an unsafe manner, thus only alleging that the government was negligent in its use of the facility. Therefore, Padilla's complaint lacked sufficient jurisdictional facts to support an immunity waiver under the provision of the CGIA waiving immunity for a dangerous condition of a public facility. Accordingly, we affirm the judgment of the court of appeals upholding the trial court's order dismissing Padilla's negligence action.

Justice COATS concurs in the judgment only, and Chief Justice MULLARKEY and Justice KOURLIS join in the concurrence.

Justice COATS, concurring in the judgment only:

While I would also find the allegations of the complaint insufficient to support a waiver of governmental immunity, I believe the majority's rationale unnecessarily departs from the plain language of the statute and reinterprets our prior holdings in ways with which I cannot agree. I believe that a simple and straightforward reading of the statute places the allegations of the complaint outside the waiver. I therefore join in the judgment of the court but write separately to explain my reasons for doing so.

As a public entity, the school is immune from suit for injuries by operation of the Colorado Governmental Immunity Act, §§ 24–10–101 to –120, 7 C.R.S. (2000) (the "CGIA"), under all circumstances other than those in which governmental immunity has expressly been waived. § 24–10–106. As relevant to this case, the sovereign immunity of a public entity is waived in actions for damages for injuries resulting from a "dangerous condition of any public building." § 24–10–

106(1)(c). A "dangerous condition," in turn, is defined by the legislature to mean:

a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Maintenance does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.... A dangerous condition shall not exist solely because the design of any facility is inadequate.

§ 24–10–103(1). When explaining the "dangerous condition" waiver of governmental immunity in the past, this court has consistently articulated the statutory requirements, all of which must be satisfied in order to demonstrate a waiver under section 24–10–106(1)(c), in terms virtually identical to those of the statute. *See, e.g., Springer v. City & County of Denver*, 13 P.3d 794, 799 (Colo.2000); *Walton v. State*, 968 P.2d 636, 644 (Colo.1998). For a suit to be within the waiver, we have explained that the injuries must have occurred as the result of (1) a physical condition of a public facility or the use thereof, (2) which constitutes an unreasonable risk to the health or safety of the public; (3) which is known to exist or should have been known to exist in the exercise of reasonable care, and (4) which *condition* is proximately caused by the negligent act or omission of the public entity in constructing or maintaining the facility. *Springer*, 13 P.3d at 799; *Walton*, 968 P.2d at 644.

In its logical sequence, the test therefore requires that the injury have resulted either directly from a physical condition that was proximately caused by a negligent act or omission of the public entity in constructing or maintaining a public building, or from the use of such a physical condition.[1] In addition, the physical condition or the particular use of it must have been one that was known,

or in the exercise of reasonable care should have been known, and it must have been such as to constitute an unreasonable risk to the health or safety of the public. Whether or not these additional criteria of the test have been met, however, there simply can be no waiver of governmental immunity under this "dangerous condition" provision unless there exists a physical condition that was proximately caused by the public entity's negligence in constructing or maintaining its facility and the injuries in question resulted from that physical condition or its use. § 24–10–103(1).

Although the statute does not define the word "maintaining," we have expressly considered its use in this context and have construed it to have its common meaning of keeping the facility "in the same general state of being, repair, or efficiency as initially constructed." *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1386 (Colo.1997). In rejecting an interpretation very similar to that urged by the Padillas—that "maintaining" a facility should be understood in the sense of merely owning and possessing or keeping a facility that could be used dangerously—we noted the 1992 amendment to the definition of "dangerous condition," making clear that maintenance "does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility," as well as the comments of the amendment's sponsor to the effect that " 'maintain' was intended by the legislature to mean a duty to restore a facility to the same condition as originally constructed." *Id.* at 1385. We further noted the statutory caveat that a dangerous condition cannot exist solely because the design of the facility is inadequate. *Id.*

Nothing on the face of the Padillas' complaint speaks to a physical condition proximately caused by an act or omission in maintaining the building in this sense. The gravamen of the complaint concerns the allegedly improper placement and supervision of the stroller and the entity's failure to make the facility safe for use as a seclusion room by covering the hard tile floor and building a window. Much like the complaint

---

1. We have previously considered the phrase "use thereof" as it appears in section 24–10–103(1), and determined that it refers specifically to a use

of the "physical condition," as distinguished from merely the use of the building generally. *Jenks v. Sullivan*, 826 P.2d 825, 827 (Colo.1992).

in *Swieckowski,* these allegations depend for their sufficiency upon a broad definition of "maintain" to include merely keeping the room available without upgrading its condition or improving its design. Under any theory advanced by the Padillas, therefore, their negligence claim does not fall within the statutory waiver for a dangerous condition and is clearly barred by operation of governmental immunity.

In my view, the majority misapplies both the statute and our decisions explaining it. In the majority's words:

> [T]o be actionable, the state of the building or use of a state of the building and the injury resulting therefrom: (1) must have occurred *in connection with* a negligent act or omission of the governmental entity, not a third party; (2) must be *associated with* "constructing" or "maintaining" the facility; and (3) must not be solely due to the facility's design.

Maj. op. at 1181 (emphasis added). In its rewritten formula for a waiver of immunity, the majority simply eliminates the General Assembly's requirement for a "physical condition;" recasts the legislature's specific causal requirements ("resulting from," "proximately caused by") in general relational terms ("in connection with," "associated with"); and deprives the terms "constructing" and "maintaining" of any particular content or meaning, instead interpreting them broadly to "[give] effect to the Premises Liability Statute." Maj. op. at 1182.

In its analysis of *Jenks v. Sullivan,* 826 P.2d 825 (Colo.1992), the majority relies on the general dictionary definition of "condition," quoted as a starting point in *Jenks,* but fails to further limit that definition to its physical applications, as required by the statute and our analysis in *Jenks.* It therefore concludes that the legislative term "physical condition" need not refer to the physical or structural aspects of the facility but merely refers to a "situation" or "state of being." I suggest that in *Jenks,* we concluded the exact opposite.

Thus, the statute refers to an injury arising from the state of the building itself or the use of a state of the building, but not to one arising from activities conducted within the building. Injury stemming from the use of a dangerous or defective physical condition of the building itself might include injury resulting from, for example, using a faulty elevator or falling down defective stairs.

*Id.* at 827.

The dangerous condition must stem from a physical or structural defect in the building.

*Id.* at 830.

The majority's approach also no longer requires that the condition be proximately caused by an act or omission of the entity in constructing or maintaining the facility. While section 24–10–106(1)(c) waives governmental immunity only for injuries "resulting from" a "dangerous condition of any public building", and section 103(1) limits a "dangerous condition" within the meaning of the statute to a "physical condition" that is "proximately caused" by the public entity's negligence in constructing or maintaining its facility, the majority extends the waiver to injuries resulting from "the state of the building or use of a state of the building" that "occurred in connection with" the entity's negligence and are "associated with" constructing or maintaining the facility. The waiver is thus expanded to include injuries that did not result from a physical condition of the facility at all, much less a physical condition that was proximately caused by the public entity's negligence in construction or maintenance. Under this formulation, immunity is waived for injuries that are, in some undefined way, connected to or associated with maintenance or construction.[2]

Finally, although unnecessary to resolve the waiver question in this case, the majority explains that the statute does not "fix" the meaning of either "constructing" or "maintaining." While the analysis of "maintaining"

---

2. In *Walton,* where a student was injured when a ladder she was using to remove supplies from a loft slipped on a floor that had been recently stripped and sealed, we pointed out that the injuries at issue there resulted from a combination of factors, including a physical condition proximately caused by the public entity's negligence in maintaining its floor, which is a quintessential act of maintenance within the meaning of section 24–10–103(1). Because the injury resulted from a physical condition caused by maintenance, it was also necessary to demonstrate that

in *Swieckowski,* even according to the majority's reading, is sufficient to dispose of the allegations here, the majority insists that the meaning of "maintaining" is not limited by our analysis in that case. Similarly, although the meaning of "constructing" is not implicated in any way by the theories of the complaint, the majority finds the term sufficiently elastic to include the temporary use of a portable extension ladder, offering this interpretation of "constructing" as an alternate explanation for our holding in *Walton.* Most significantly, however, the majority apparently finds these two terms to be expansive and overlapping because of the relationship it perceives between the basis for waiver of immunity and permissible theories of recovery. I consider any suggestion that the meaning of "constructing" and "maintaining" is governed by a theory of recovery for premises liability to be an unwarranted extension of our holding in *Springer.*

Following the decision of this court in *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971),[3] the General Assembly made the public policy choice to restore governmental immunity from suit for injury, as it had authority to do. *See* ch. 323, sec. 1, §§ 130–11–1 to –17, 1971 Colo. Sess. Laws 1204, 1204–11; *Walton,* 968 P.2d at 643. In the very act of doing so, it recognized that the doctrine of governmental immunity would be inequitable in some instances but noted that unlimited liability could disrupt or make prohibitively expensive the provision of essential public services, and that the taxpayers would ultimately bear the burden of unlimited liability. It therefore delineated a number of limited circumstances in which immunity would be waived, including for injuries resulting from certain dangerous physical conditions caused by the negligent construction or maintenance of public buildings. Whether for reasons of proof, or predictability and uniformity of application,

or something else altogether, the General Assembly has chosen to limit the state's liability for dangerous conditions in public buildings to injuries resulting from dangerous physical conditions caused by the public entity's failure to construct the building as it was designed or to maintain it as constructed. Whatever the merits of the policy, it clearly provides a rational basis for distinguishing victims who are entitled to seek recovery from those who are not.

Besides explaining the waiver in a way that I do not believe comports with the language of the statute, the majority opinion does two other things with which I disagree. Rather than narrowing the ground for decision in the case before us, the majority's "case by case" approach, in my opinion, makes less definite and thereby expands the parameters of the waiver of immunity provided by statute. It provides no meaningful guidance for government entities seeking to obey the law or trial courts seeking to apply it. I do not understand our pronouncement in *Corsentino v. Cordova,* 4 P.3d 1082, 1086 (Colo.2000), to suggest that waiver provisions are to be construed so broadly. If the statutory waiver is as malleable as the majority finds it to be, I am hard pressed to find a principled basis for denying recovery by the student in this case, who was negligently restrained and secluded by her teacher, while permitting recovery by the student in *Walton,* merely because her injury involved the use of a portable ladder to remove supplies from a loft.

I therefore concur in the judgment only.

Chief Justice MULLARKEY and Justice KOURLIS join in the concurrence.

---

the combination of factors presented an unreasonable risk about which the entity should have known in order to satisfy all of the conditions of the waiver. To the extent that our opinion in *Walton* could be read to imply that the mere participation of the injured victim in a maintenance-related activity could actually make a physical condition proximately caused by maintaining the facility unnecessary for a waiver, such a reading would not be supported by the language of the statute and furthermore would

be completely unnecessary to the holding in that case.

3. The common law of governmental immunity was abolished in the course of a trilogy of cases decided by this court in 1971. *See Evans,* 174 Colo. 97, 482 P.2d 968; *Flournoy v. Sch. Dist.,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971).